May I please the Court? My name is Victor Halton. I was Scott Vogelsang's attorney at the trial in the district court and now representing him on this appeal. I'd like to reserve five minutes for rebuttal. The first issue I'd like to address in this case is the loss issue. This is a case where Mr. Vogelsang was charged with a Nigerian hotel fraud. And at the trial, the government adduced evidence regarding his purported over-billing or double-billing with regard to in excess of 20 beneficiaries. This is a company that handled thousands and thousands of beneficiaries. And the government focused on approximately 20 beneficiaries, in connection with whom he supposedly over-billed. As to these 20 beneficiaries, this was a fairly short trial, so some of these beneficiaries, there was absolutely no testimony presented regarding how much loss was purportedly occasioned by the billing practices of Mr. Vogelsang in this case. This is a case that was tried just before Blakely was decided. So the parties were not going into the trial focusing on questions of do we need to present to the jury evidence regarding amount of loss. It was – and the government says in response to the argument that I presented in my opening brief, well, the defense had ample opportunity at this trial to cross-examine our financial expert regarding the loss figures. Well, counsel, I guess I'm a little puzzled as to what the crux of your position is with respect to loss. The government did put on evidence of loss. Did you have a contrary theory of how it should be calculated? I didn't go into trial thinking loss was even at issue. The amount of loss was something that would have been determined in the pre-Blakely world by the – and now in the post-Booker world – by the district judge at sentencing. It was not something we focused on. The government in its – we went to trial on a second superseding indictment. They alleged in a chart approximate loss figures. Well, what should have been done here? I'm not understanding. What should have been done is that at the sentencing, an evidentiary hearing should have been conducted. I should have – my request for the – For what? Did you contest? Did you say that's not accurate? I'm not understanding what – what was in dispute. The – I mean, as to each of the 20-plus beneficiaries, the government contends $10,642.15 is the loss for Beneficiary X and then another amount for Beneficiary Y. I contend that their figures are entirely unreliable. Their figures – and in the record before the Court here are multiple figures that the government came up with as this case went through its various phases. And the government's accounting figures repeatedly changed. Well, it was your client's billings that were at issue, wasn't it? It is my client's billings that was at issue. He didn't do all of the billing. I mean, there was – that was a big issue at this trial. Our defense was not that some overbilling did not occur in this case. We conceded to the jury, hey, this is a high-volume business with 20-plus employees. Mistakes occurred. Even if you hadn't conceded, you are not suggesting the government didn't establish beyond a reasonable doubt that there was some unusual bookkeeping system going on, do you? Well, I mean, that's what the jury found. The jury found convicted him of billing fraud. So I'm not here to – I'm not making a sufficiency argument, Your Honor, so I'm not contesting that for these purposes. I know, but you said he conceded, and I'm thinking whether he conceded it or not. The record pretty clearly shows that there was some unusual billing. What do you think the narrow issue is before us today? The narrow issue is whether the district court here had a sufficient reliable basis upon which to fix the loss amount in this case at approximately $160,000. The probation officer – I mean, this case was litigated extensively after the PSR was submitted. There was extensive briefing regarding whether there was an accurate basis upon which for the court to determine loss. I requested that the court authorize the appointment of an accounting expert. I'm not an accounting expert, and I'm sure this Court has seen Medicare. Did you offer any kind of affidavit or anything that would show what you would – what you would – what you would – what the court would be asked to find? Did I – I didn't offer any type of affidavit, no. I submitted – I went through the procedure required by the CJA Act, which was to – I'm court-appointed counsel in the case. Judge, I request the provision that you authorize me to incur the expenses associated with the appointment of an accounting expert. I found an accounting expert. I provided his CV to the court and asked the court to allow that expert to become involved, because I'm not competent to delve into these extremely complex claims as to each one of these beneficiaries. And I've provided in the excerpts of record, particularly in the supplemental – Okay. I've provided – just for example, in the supplemental excerpts of record, I've provided in the supplemental excerpts, which show the claims in this case going all over the place. These are dual-eligible beneficiaries where Mr. Vogelsang is submitting claims that have multiple components. They are claims where he would submit a claim to Medicare. Medicare would review the claim at five or six different levels, deny it, deny it, deny it, and then ultimately approve it. Then Medi-Cal would have to get involved in the processing of these claims. So my – I guess in terms of the narrow issue is, was there enough evidence before this Court, for this – for the district court, for it to make a reliable determination concerning – How do we review that? Is that an abuse of discretion? It is. Did the district court abuse its discretion in denying my request for an evidentiary hearing? And the government contends that, well, this is a straightforward, easy case in which to determine loss. That was the position that the AUSA took at the district court level, and that's the position that the government takes now. And I believe that if the intricacies of this billing process are understood, and even if just looking at the different positions the government has taken – evidence, and we don't see even as much as an affidavit suggesting what the defects are in that – in that – that presentation of evidence. I suppose I would be in a better position if I had an affidavit from a certified CPA saying, I'm familiar with this case, and – But it doesn't have to be an affidavit. Anything to put it in issue, anything to cause the trial court to know, uh-oh, I'd better stop. There's two sides to this question. Well, Your Honor, in the objections that I made through the sentencing process, the probation officer concluded, based upon the objections I was making, an evidentiary hearing needs to be conducted in this case to resolve the loss issue. I think we understand your position. Do you want to talk about your other issue? Very well, Your Honor. The – as to the exclusion of defense evidence in this case, I attempted to call a witness who worked for the fiscal intermediary for Medi-Cal in this case, EDS. That employee was named Hilda Robles. She had – had hands-on involvement in the processing of one of the claims concerning one of the beneficiaries at issue in this case. The government's position is, well, it's just speculative as to whether if you were able to share with this jury information that EDS had a crook working for it who pled guilty to a Federal felony in connection with the manipulation of claims similar to the claims that Mr. Vogelsang was working, well, the jury would have had to speculate, could she have gotten her hands on some of his claims? Would she have had the motivation? Uh-huh. Go ahead. The – and I certainly do not have, and I did not at the district court level have, concrete evidence that, yes, she did monkey around with Mr. Vogelsang's claims in this case. You had evidence that she – there was evidence that she monkeyed around with somebody else's claim? Yes, Your Honor. And so you wanted to have the jury say, well, if she was monkeying around with those, then maybe she was monkeying around with these, and it wasn't Mr. Vogelsang's fault? Right. Is that the theory? We had – yes, Your Honor, that is the theory. We had a number of – There was no evidence that she ever had any – that she ever did monkey around with his claims? Not that she monkeyed around with his claims. There was evidence that she was – he went directly to her for – before her criminality came to light, her to assist him in connection with one of the beneficiaries in this case who he was having problems with the reimbursement in connection with her claim. Let me review, though. Don't we have to see if that was – if there's no step missing, and there are several steps missing in order for your theory to be one that we would say that the court was required to let you do what you wanted to do? Wouldn't we have to? Well, I do concede that there – my claim is not like, hey, I have an eyewitness who saw somebody do the crime. But what is the probative value of this evidence? What is the inference that you would draw from this evidence that would have any bearing on the case? I would say that here is a possible explanation in a case where the defense cannot explain to you some of these billing irregularities. And that was what I said in opening statement. There are going to be claims before you, ladies and gentlemen of the jury, which are clearly irregular and which resulted in overpayment. There were also claims that result – were irregular and resulted in underpayment. Here we have a possible explanation as to how something may have occurred. We have somebody committing fraud with a – somebody else. So therefore, it's possible that that person committed fraud here, even though there's proof that this person committed fraud. I don't quite follow that. Well, that's – I guess that sort of is similar to what happened in Holmes v. South Carolina, where there was clearly evidence that Mr. Holmes committed the homicide. He wanted to introduce evidence that I have an alternative theory as to how this may have occurred. Let me present the evidence. And that's what I have here, is, you know, the government has evidence that my client committed billing fraud in connection with approximately 20 out of thousands and thousands of claims. I have an alternate explanation. It does not definitively establish that this EDS employee is responsible for everything that went wrong with these particular claims. Definitively? How does it even suggest that? Well, the district judge recognized that it had probative value. The district judge ultimately excluded it on 403 grounds. How does it even – I grant the Court that there is a degree of speculation required here. I do not have the, you know, hands-on evidence that she monkeyed with these claims. It's just that, I don't know, if you're having a – maybe an analogy would be in the Enron, Arthur Anderson situation, where Enron tried to blame a lot of the problems with their books on Arthur Anderson. I'm sure that they wouldn't be able to completely explain whatever criminal activity or the scope of the criminal activity Arthur Anderson was engaged in. And likewise, I cannot explain or – I never was able to put Hilda Robles on the stand, but she is a crooked EDS employee working in the company that is the fiscal intermediary responsible for handling my client's claims. I think that that's information that the jury is entitled to consider in assessing factually, is there a possibility that Mr. Vogelsang did not intentionally commit this fraud. I mean, he put on – I put on evidence on his behalf throughout the trial that there were a number of times where he was – But he did not intentionally. What's the theory, that she led him on to do this? No, not that she led him on, but she was – she herself was involved in a scheme which is independent of what the government characterizes as my client's scheme. She's making money for herself, but basically getting bribed by other EDS employees who were involved with her in her scheme. And I – we don't know the scope of that scheme, Your Honor. It could have swept in some of these claims in my client's case. And I'd like to reserve the balance of my time. May it please the Court. Thomas Flynn for the United States. Most of the defendant's arguments from the government's point of view only have merit if you assume that the defendant wasn't convicted. I think this is the point perhaps that Judge Ferris was trying to make. The defendant's attorney, for instance, just said he didn't do the billing. Well, the fact is that this jury convicted him of double billing. That was the government's theory. He was found guilty in all of those. So all of these charts and all of the complicated regulations that the department – excuse me, that Medi-Cal and Medicare have, those may have had something to do with whether or not he was guilty. But once he's found guilty, there's only one question. He was paid twice. How much were those payments? And to this day, the defendant has not given any information, despite the fact that there was a year's gap between the trial and the sentencing when he could have gotten this information together. There's even more time before this appeal. There is not one factual assertion in the government's chart that lists how these losses were calculated that he's capable of not only of challenging the fact, but even what theory would make them wrong. I'm not aware of how that works here. The fact is that the government's chart, if you just read the testimony of the expert who compiled it, is just a list of the payments that were made. You can identify the item. You can identify the price. He was paid twice. You compare the two, and you can see what things he was paid twice for. It doesn't matter how complicated a process it was to get there. He was paid twice. And the government thinks that the amount of the loss is the amount that he was paid twice for. And it's pretty much as simple as that. All the rest of this stuff has nothing to do with sentencing. It's just a guilt. And he has yet to assert even a theory as to that. On the... What I think he's doing, Mr. Flynn, is relying on innocence until proved guilty. And he has been proved guilty. But he wants, I think, as I read his argument, us to assume that either he wasn't proved guilty, or he would not have been had we been able to show thus and so. And there's some holes in getting from where they want us... where they are to where they want us to go. And I wanted to fill them in, if you could, but... Well, I... No, wait. I'm getting confused. You've been addressing the loss issue, I take it? Correct, Your Honor. And I was about to address the other one. Okay. As far as the question of Hilda Robles, I think this is... I guess liability isn't the word, but it's like third-party liability. You say somebody else did this crime. And in all of the cases that the defendant cites, there is somebody else who he points to and he says, I didn't do this, this person did, and here's how he could have done it. There is no such person in this case. There were statements made during the argument today that Hilda Robles might have been monkeying with the books or something. She didn't. Her crime was failing to report other people at EDS who were doing a crime that had absolutely no relation to this one. They were taking claims that were late, and in order to help someone who I believe was paying them off, were putting those claims in a basket that said they're not late so that they could get paid. This was not a double-billing case. His only contact with Hilda Robles came after he was alerted to the fact that he was under investigation. He then started to try to clean up his act. He tried calling the people at EDS who would normally handle him. They weren't available. He called Hilda Robles instead. She didn't even handle claims for this argument. That was my question. Is it clear that she didn't handle his claims? She didn't handle anybody's claims as far as I know. She was a supervisor, and just a couple of dates here. He contacted her, I believe, on October the 12th of 2001. The claim he contacted her about, which was the Dickerson claim, was paid a month earlier on September 10th, 2001. So that was already over. Whatever fraud had been committed had been committed before he even talked to her. I think the defense tries to make a big deal out of the fact that there are cases in this court, Vallejo, for instance, that talk about, well, it's okay if it's speculative. I think it's important to realize what it is that can be speculative. It can be speculative that the scenario the defendant is proffering actually happened. But you can't just have a completely speculative scenario and say somebody else did it without specifying how they might have done it, who might have done it. We're left here to ask, who did it? He doesn't know. He can't even proffer someone who might have done it. All he has is someone who, in a completely unrelated set of cases, took money to not report somebody for what they were doing. Thank you. Thank you. On the loss issue, the person who testified concerning what the government now looks to as the basis for satisfying their burden of proof, and it is their burden of proof on this loss issue, was an auditor in the United States Attorney's Office. At trial, I referred to him as an auditor. The government objected, saying he didn't do an audit in this case. This auditor or financial expert acknowledged during his testimony, there is, in the calculations for the loss that we have on a spreadsheet that was presented to the jury, there is an error in there. And I don't know what it is. And I don't know whether it affects the loss amount up, and I don't know whether it affects the loss amount down. And that was not a big deal at the time of trial, because this was before Blakely. So we weren't, neither I nor my opposing counsel from the government, were focused on, do we need to address this loss issue with precision at the time of trial? Then after this, after the verdict, but before sentencing, Blakely gets decided. There was a long delay, and Booker even gets decided. So I'm not, with respect to the loss issue, I'm not re-arguing guilt or innocence. My position is that this is an extremely complex accounting calculation that the government doesn't get to satisfy that burden of proof by simply making an accusation in an indictment and saying X amount of dollars for Victim 1, X amount of dollars for Victim 2, and that's it. That's all that's been done here. There was no other way. Sotomayor, what do you want us to do? Remand the case for an evidentiary hearing on loss, because there has never been an opportunity. For what reason? I have never had an opportunity to contest the amount of loss that was at issue What would you show? I would get an expert to look, to delve into these records. And I found that It could have come out that it was greater than your I admit that. And it could have also come out that it was dramatically less. And so why don't we just say the government has said it was $160,000. No, the government didn't say it was $160,000. The government said the number of double payments equals $160,000. But that's, again, their own expert on this subject has acknowledged that there is an error in its arithmetic, which we don't know what it is and which way that error works out. That's at pages 1143 through 1145 of the excerpts of record, which is my cross-examination of him. And it's not just as Mr. Flynn indicated to the Court that what we did here was add up double payments to Mr. Vogel saying. It is by no means that simple. What is the closest authority that you have that says that isn't that? Because you seem to be arguing that as a matter of law, there has to be an evidentiary hearing in order for you to question figures in which you have given us no basis in which to question other than a medical error. My theory, and I'm perhaps not articulating it well, is that it's the government's burden to prove. You didn't post Booker on loss. And the government has not discharged that burden. The government hasn't at any time in this case tried to introduce evidence of loss. They've had no occasion to because there was no occasion to do so at a pre-Macon lengthy trial. There has been no occasion to do so during the sentencing process because my request for an evidentiary hearing was denied. And the government has not discharged that burden. So what case do we look to that says that you have to have an evidentiary hearing regardless of whether there's anything contested? There's a number of cases that I cited in my open brief, Your Honor. There's a section of the brief concerning loss from all different circuits, including this Court. Well, what's the closest case? Or if you don't have it on the tip of your tongue, Your Honor. But it is in my opening brief and in my reply brief, for that matter. But it's just and there's even the guideline section, I think it's 6A1.3, concerning a defendant's entitlement to an evidentiary hearing when you have a contested Yeah. factual issue. And that's what we have here. It's just to say, well, I haven't come up with a theory. It's you're you're you're you're you say it's contested because you didn't have a hearing. I say it's contested because I contested it at every step post-verdict that was made available to me. I contested it in my informal objections to the draft PSR. I contested it in my motion to correct. I requested an evidentiary hearing. I requested the appointment of an expert. I don't know how else I can contest it. I can't. I mean, I could issue an affidavit saying, I, Victor Halton, have had no training in accounting, and No, but what do you want your expert to do? What would your expert do on this record? Look through these extremely complicated billing claims that involve literally I mean, that would take us days to hours in single days to go through one claim. And my expert would look at those and say, okay, assuming the guilty verdict to be accurate here, here is the amount of overbilling that actually occurred here. And, Your Honor, there were repeated instances where the administrative bureaucrats in Medicare and Medi-Cal changed their figures. These claims were repeated over time. I think your time has run. All right. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Segal.
judges: Schroeder, Farris, Rawlinson